FILED

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160

11 JUN 21  PM 3:08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorneys for Plaintiff Sanjay Maadan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY MAADAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN and DEREK PALASCHUK,<br><br>                         Defendants. | Case No. **CV11—05182 MMM (MANx)**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Sanjay Maadan ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Longtop Financial Technologies Limited ("Longtop" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Longtop; and (c) review of other publicly available information concerning Longtop.

### NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of Longtop's securities between May 15, 2009, and May 17, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Longtop, together with its subsidiaries, designs, develops, and delivers software solutions and information technology ("IT") services to the financial services industry in the People's Republic of China.

3.      On or about April 26, 2011, Citron Research ("Citron") issued a report on Longtop stating "every financial statement from its IPO to this date is

fraudulent."  The report raised serious issues with the quality of the Company's earnings reports and operations, pointing to a suspicious off-balance-sheet arrangement with Xiamen Longtop Human Resources ("XLHR"), a staffing company that allowed Longtop to report overstated profit margins and inflated financial results. The report also called into question the integrity of Longtop's key management, specifically pointing to undisclosed misdeeds involving past unfair business practices.

4.     On this news, the Company's shares declined $3.30 per share, or nearly 33%, to close on April 26, 2011, at $22.24 per share, on unusually heavy trading volume, and further declined another $4.51 per share, or more than 20%, to close on April 27, 2011, at $17.73 per share, also on unusually heavy trading volume.

5.     Soon after, Longtop hosted a conference call during which it vehemently denied every aspect of the report and assured investors that not only was Citron wrong, but that the Company would soon be issuing positive financial results that would receive a clean bill of health from Longtop's auditors.

6.     On May 9, 2011, Citron issued an additional report on Longtop entitled, "Longtop Financial (NYSE: LFT) Final Proof of Undisclosed Related Party Transactions."  The report further revealed the Company's connection to XLHR and how that connection materially impacted Longtop's financial condition.

7.    On this news, the Company's shares declined $1.67 per share, or 8.2% to close on May 9, 2011, at $18.54 per share, on unusually heavy trading volume.

8.    On May 10, 2011, the Company issued a press release further denying the claims of both Citron reports, as well as a similar report issued by OLP Global.

9.    On May 17, 2011, trading in the Company's shares was halted pending an announcement by the Company.

10.    On May 19, 2011, Longtop issued a press release announcing that the Company would not announce its fourth quarter and fiscal year 2011 financial results on May 23, 2011, as previously scheduled (and emphatically reiterated by defendants in their false denials of the Citron reports). The Company stated that it "plans to publish an announcement on the new date of fourth quarter and fiscal year 2011 earnings reporting once the date has been determined."

11.    Then, on May 23, 2011, the Company issued a press release announcing that its independent auditor, Deloitte Touche Tohmatsu CPA Limited, had resigned after identifying matters relating to the fairness and reliability of Longtop's financial statements for fiscal 2010 and 2011. Additionally, the Company announced that the SEC was conducting an investigation into the Company and that its Chief Financial Officer ("CFO")

Derek Palaschuk ("Palaschuk") tendered his resignation dated May 19, 2011.

12.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) certain related party transactions relating to XLHR; (2) that the Company had vastly overstated its operating margins; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

16.     Venue is proper in this Judicial District pursuant to §28 U.S.C.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

§1391(b) and §27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

17.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

18.    Plaintiff Sanjay Maadan, as set forth in the accompanying certification, incorporated by reference herein, purchased Longtop securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.    Defendant Longtop is a Cayman Islands corporation with its principle executive offices located at Flat A, 10/F, Block 8, City Garden, 233 Electric Road, North Point, Hong Kong.

20.    Defendant Wai Chau Lin ("Lin"), also known as Weizhou Lian, was, at all relevant times, Chief Financial Officer ("CFO") of Longtop.

21.    Defendant Derek Palaschuk ("Palaschuk") was, at all relevant times, CEO of Longtop.

22.     Defendants Lin and Palaschuk are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Longtop's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS
### Background

23.     Longtop, together with its subsidiaries, designs, develops, and delivers software solutions and IT services to the financial services industry in the People's Republic of China.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.     On October 25, 2007, the Company completed its listing on the New York Stock Exchange ("NYSE") of ADSs representing ordinary shares offered in the Company's initial public offering, which closed on October 29, 2007.

### Materially False and Misleading
### Statements Issued During the Class Period

25.     The Class Period begins on May 15, 2009.  On this day, the Company filed a Form 6-K with the SEC, which was signed by Defendant Palaschuk. Therein, the Company, in relevant part, stated:

> ***Nine Months Ended December 31, 2008, or the 2008 Period, Compared to Nine Months Ended December 31, 2007, or the 2007 Period***
>
> ***Total Revenues.*** Total revenues for the 2008 Period were $80.4 million, an increase of 61.6% from $49.8 million in the 2007 Period, primarily due to the reasons below. The following table sets forth the revenues generated by each of the two primary sources of our revenues for the 2007 and 2008 Periods:
>
> \*     \*     \*
>
> ***Net Income.*** As a result of the foregoing, we had net income of $34.6 million in the 2008 Period as compared to a loss of $1.7 million in the 2007 Period.

26.     On May 27, 2009, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter and Full Year Ended March 31, 2009."   Therein, the Company, in relevant part, stated:

- Fourth Quarter Total Revenues of US$25.9 million, an Increase of 60.3% Year-on-Year;

- Fourth Quarter Adjusted(1) Net Income of US$11.0 million, an Increase of 76.6% Year-on-Year;

- Full Year Total Revenues of US$106.3 million, Up 61.3% Year-on-Year; Adjusted Net Income of US$51.6 million, an Increase of 52.8% Year-on-Year; Operating Cash Flow of US$41.8 million

\*       \*       \*

"I am very pleased to report that we have concluded fiscal 2009 with another quarter of solid results. We look back at a great year in which we enjoyed significant business expansion despite a challenging economic environment and capitalized on the market opportunity for IT development in China's financial services sector to extend our software and solutions and further diversify our customer base," commented Weizhou Lian, CEO of Longtop. "We are off to a promising start in fiscal 2010 with our agreement to acquireSysnet which will make Longtop the second largest IT service provider in China's insurance industry by market share. Our outlook for 2010 is positive based on our sound business fundamentals and ongoing strong demand from our customers."

\*       \*       \*

Commenting on the results, Derek Palaschuk, CFO of Longtop said: "In the fourth quarter and fiscal 2009 Longtop reported revenue and Adjusted Net Income results which substantially exceeded the guidance we gave at the beginning of the fiscal year. Our strong results underscore the sales momentum, recurring revenue structure and operating leverage of our Company's business model, as well as our solid execution. Looking ahead, the attractive market opportunity calls for continuing our strategy of investing back into the business and grasping consolidation opportunities through acquisitions that will help make Longtop the leading IT service provider in China's financial services industry."

27.     On June 29, 2009, the Company filed its Annual Report on Form 20-F with the SEC for the 2009 fiscal year.  The Company's Form 20-F was signed by Defendants Lin and Palaschuk, and reaffirmed the Company's financial results previously announced on May 27, 2009.   The Company's Form 20-F also contained Sarbanes-Oxley required certifications, signed by Defendants Lin and Palaschuk, who certified:

1.     I have reviewed this annual report on Form 20-F of Longtop Financial Technologies Limited;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4.     The company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the company and have:

a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

b)     Designed such internal control over financial reporting, or caused   such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)     Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)     Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting;  and

5.     The company's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's board of directors (or persons performing the equivalent functions):

a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal controls over financial reporting.

28.     On August 18, 2009, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 10 -

Results for the Fiscal Quarter Ended June 30, 2009. Therein, the Company, in relevant part, stated:

> -- Total Revenues of US$28.5 million, an Increase of 47.4% Year-on-Year;

> -- Adjusted(1) Operating Income of US$11.6 million, an Increase of 27.7% Year-on-Year;

> -- Adjusted Net Income of US$10.7 million, an Increase of 36.6% Year-on-Year;

> -- Full year Revenue Guidance Increased to US$145.0 million and Adjusted EPS Guidance Increased to US$1.22 Per Share;

> *     *     *

> "We are off to a strong start with the results of our first fiscal quarter demonstrating healthy demand from Longtop's customers, which has allowed us to increase our full year guidance. We are seeing strong demand across all customer and product segments and we see this trend continuing. Longtop is especially pleased to be recently ranked as the #1 market share leader by IDC for banking solutions and #2 in the insurance IT solution market in China for calendar year 2008. As we did in calendar 2008, we are working hard to continue to expand our market share and market leadership in China's rapidly growing financial IT solution market," commented Weizhou Lian, CEO of Longtop.

> *     *     *

> Commenting on the results, Derek Palaschuk, CFO of Longtop, said, "We have executed to deliver outstanding top and bottom line financial results during the first fiscal quarter in what is traditionally our lowest revenue and net income quarter in the fiscal year. On the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 11 -

back of a strong backlog and pipeline in our core software development business, we are able to increase our full year revenue and net income guidance even though our non-core Other Services business, which accounts for less than fifteen percent of revenues, is facing some headwinds. Consistent with previous years, in Q2 and Q3 2010 we expect significant improvements from this quarter in our margins and cash flow from operations."

29.    On November 16, 2009, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter Ended September 30, 2009."    Therein, the Company, in relevant part, stated:

- Second Quarter Total Revenues of US$42.8 million, Up 52.0% Year-on-Year;

- Second Quarter Adjusted(1) Operating Income of US$20.8 million, an Increase of 33.4% Year-on-Year;

- Second Quarter Adjusted Net Income of US$21.4 million, an Increase of 32.0% Year-on-Year;

- Second Quarter Adjusted Diluted Earnings Per Share of US$0.40, an Increase of 29.0% Year-on-Year;

- Full Year 2010 Revenue Guidance Increased to US$158.0 million from Previous Guidance of US$145.0 million and Adjusted Diluted Earnings Per Share Guidance Increased to US$1.29 Per Share from Previous Guidance of US$1.22 Per Share

*        *        *

"I'm pleased to report that on the back of solid execution once again our second quarter financial results exceeded our top and bottom line guidance," commented Weizhou Lian, CEO of Longtop. "This quarter we achieved a number of important operational milestones including winning our first meaningful contract in the securities

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 12 -

industry and a Big Four Bankawarding us a BI consulting project over our global competitors. We also continue to strengthen our management and strive for efficiency and better execution to manage our growth. I continue to be optimistic about our prospects, as Longtop's competitive position is stronger than it has ever been and we have good visibility for continued strong demand…"

\*      \*      \*

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "The outstanding results from the fiscal second quarter further solidified Longtop's financial strength. The second quarter's record revenues were supported by robust cash flow from operations, which was US$18.8 million. And looking ahead, with strong demand and US$46.5 million in software development revenue backlog excluding Sysnet, we have increased our estimate for fiscal 2010 revenues from US$145.0 million to US$158.0 million and for Adjusted Net Income of US$70.5 million as compared to our previous guidance of US$65.0 million."

30.    On February 10, 2010, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter Ended December 31, 2009."    Therein, the Company, in relevant part, stated:

-- Third quarter total revenues of US$54.7 million, an increase of 66.2% Year-on-Year;

-- Third quarter Adjusted(1) Operating Income of US$29.3 million, an increase of 69.3% Year-on-Year;

-- Third quarter Adjusted Net Income of US$29.3 million, which includes an income tax benefit of US$4.0 million. Excluding the income tax benefit of US$4.0 million Adjusted Net Income would have increased 53.1% Year-on-Year;

-- Third quarter Adjusted Diluted Earnings Per Share of US$0.53,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 13 -

which includes an income tax benefit of US$0.07 per share. Excluding the income tax benefit of US$0.07 Per Share, Adjusted Diluted Earnings Per Share would have been US$0.46, an increase of 43.8% Year-on-Year;

-- Cash flow from operations was US$39.2 million for the third quarter and US$50.1 million for the first nine months;

-- Excluding Giantstone, full year 2010 revenue guidance increased to US$166.0 million from previous guidance of US$158.0 million, and Adjusted Diluted Earnings Per Share guidance increased from previous guidance of US$1.29 per share to US$1.39 per share, which includes US$0.07 per share from an income tax benefit recorded in Q3 2010.

*     *     *

"I'm pleased to report that on the back of solid execution from our management and employees, once again our third quarter financial results exceeded our top and bottom line guidance. We see ongoing strong demand from our customers that execute on their long-term IT development plans irrespective of short-term changes in macroeconomic factors. Based on our sales pipeline and ongoing discussions with customers about their IT spending plans, Longtop's growth prospects remain strong for fiscal 2011. I believe Longtop's competitive position is strengthening and we are taking market share from our competitors," commented Weizhou Lian, CEO of Longtop. "Furthermore, this quarter's results underscore the successful integration of Sysnet with insurance being our fastest growing customer segment. I believe the recent acquisition of Giantstone, a leading core banking solution provider in China will offer us new growth opportunities."

*     *     *

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "In the third quarter revenue and Adjusted Net Income once more substantially exceeded guidance. A robust third quarter cash flow from operations of US$39.2 million and US$50.1 million for the first nine months together with the proceeds from the November 2009

secondary offering will allow us to continue to invest intelligently in our existing operations and grasp further consolidation opportunities through acquisitions that will help extend our leading position in China's financial technology industry."

31.     On May 24, 2010, Longtop issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results For The Fiscal Quarter And Full Year Ended March 31, 2010."  Therein, the Company, in relevant part, stated:

FINANCIAL HIGHLIGHTS

Fourth quarter total revenues of US$43.1 million, an increase of 66.4% Year-on-Year;

Fourth quarter Adjusted Operating Income of US$17.5 million, an increase of 65.2% Year-on-Year;

Fourth quarter Adjusted Net Income of US$16.3 million, an increase of 48.2% Year-on-Year;

Fourth quarter Adjusted Diluted Earnings Per Share of US$0.28, an increase of 33.3% Year-on-Year;

Fourth quarter US GAAP net income per diluted share of US$0.10, a decrease of 41.2% Year-on-Year;

Full year total revenues of US$169.1 million, up 59.0% Year-on-Year;

Full year Adjusted Operating Income of US$ 79.1 million, up 50.6% Year-on-Year;

Full year Adjusted Net Income of US$77.7 million, which includes an income tax benefit of US$3.8 million. Excluding the tax benefit, Adjusted Net Income would have increased 43.2%;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 15 -

Full year Adjusted Diluted Earnings Per Share of US$1.41, which includes an income tax benefit of US$0.07 per share. Excluding the tax benefit, Adjusted Diluted Earnings Per Share would have increased 36.7%;

Full year US GAAP net income per diluted share of US$1.07, an increase of 28.9% Year-on-Year;

Cash flow from operations was US$13.2 million for the fourth quarter and US$62.9 million for the fiscal year 2010.

"I am very pleased to report that we have concluded fiscal 2010 with another quarter of solid results. We look back at a year in which our business flourished due to significant organic business expansion in the financial IT industry, and the synergies of the Sysnet acquisition that further boost our presence in the insurance IT solution market. This quarter's results once more indicate that Longtop's business is based on the indispensable and recurring nature of our software and solutions," commented Weizhou Lian, CEO of Longtop. "Our outlook for 2011 is strong based on our sound business fundamentals and feedback from our customers. With the acquisition of Giantstone, we feel we are better positioned to capitalize on the long-term growth opportunity in China's financial technology market."

\*       \*       \*

Commenting on the results, Derek Palaschuk, CFO of Longtop, said: "In the fourth quarter revenue once more substantially exceeded our previous guidance, demonstrating the continuing strong demand for Longtop solutions. Even with the inclusion of $1.1 million in operating losses from consolidating Giantstone, our operating and net income was still well above guidance. Our continuous efforts to further improve overall business execution were underscored by a strong cash flow from operations of $62.9 million for fiscal 2010. Looking ahead, our positive business momentum, stable margin structure and strong cash balance form a solid foundation to consolidate our leadership position in China's financial technology industry in fiscal 2011."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 16 -

32.     On July 16, 2010, the Company filed its Annual Report on Form 20-F with the SEC for the 2010 fiscal year.  The Company's Form 20-F was signed by Defendants Lin and Palaschuk, and reaffirmed the Company's financial results announced May 24, 2010.  The Company's 20-F also contained Sarbanes-Oxley required certifications, signed by Defendants Lin and Palaschuk, substantially similar to the certifications contained in ¶27, *supra*.

33.     On August 17, 2010, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter Ended June 30, 2010."  Therein, the Company, in relevant part, stated:

-- Total Revenues of US$48.9 million which Included US$2.4 million in Revenue From Zhongbo, a Business Acquired in Q1 2011, an Increase of  71.6% Year-on-Year (YOY), or 63.2% YoY Excluding the Impact of Zhongbo;

-- Total Software Development Revenues of US$38.7 million, an Increase of 56.8% YoY;

-- Adjusted(1) Operating  Income of US$19.1 million, an Increase of 65.4% YoY;

-- Adjusted  Net Income of US$17.9  million, an Increase of 67.3% YoY;

-- Adjusted Diluted Earnings Per Share of US$0.31, an Increase of 55.0% YoY;
-- Full Year Revenue Guidance Increased to US$233.0 million and Adjusted  EPS Guidance Increased to US$1.70

*       *       *

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 17 -

"We have commenced our 2011 fiscal year with solid first quarter results. I am pleased to see the continuing strong demand for Longtop's solutions due to long-term and structural technology growth trends in the financial services industry, which tend to be independent of the macroeconomic environment. Once again, our company-wide effort to extend Longtop's market leadership was rewarded with strong independent endorsement by IDC, ranking us #1 for banking solutions and #2 in the insurance IT solution market in China during calendar year 2009," commented Weizhou Lian, CEO of Longtop. "In consideration of our growth momentum, we increase revenue and net income guidance for fiscal 2011."

\*       \*       \*

"We have delivered sound top and bottom line financial results during the first fiscal quarter, which is traditionally our lowest revenue and net income quarter in the fiscal year. The strong outlook, evidenced by a healthy backlog and pipeline in our core software development business, has allowed us to increase guidance, and for the first time in our history we expect to achieve US$100 million in Adjusted Net Income," commented Derek Palaschuk, CFO of Longtop. "As in previous years, in Q2 and Q3 2011 we expect significant improvements from this quarter in our margins as well as from cash flow from operations."

34.    On November 15, 2010, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter Ended September 30, 2010." Therein, the Company, in relevant part, stated:

--Total Software Development Revenues of US$55.5 million, an Increase of 50.0% Year-on-Year (YoY);

--Total Revenues of US$60.5 million, an Increase of 41.2% YoY;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 18 -

--Adjusted(1) Operating Income of US$28.7 million, an Increase of 38.4% YoY;

--Adjusted Net Income of US$25.7 million, an Increase of 19.8% YoY;

--Adjusted Diluted Earnings Per Share of US$0.44, Three Cents Ahead of Company Guidance;

--Operating Cash flow of US$31.6 million, an Increase of 67.6% YoY;

--Full Year Revenue Guidance Increased to US$242.5 million and Adjusted EPS Guidance Increased to US$ 1.76

\*     \*     \*

"The financial results of the second fiscal quarter have exceeded our Company guidance. I am pleased to see the ongoing strength in demand from across the full spectrum of our customer base. The outstanding revenue contribution from Other Banks reaffirms the success over the past four years in diversifying and expanding our customer base as well as last year's acquisition of Giantstone and its core banking capabilities. We continue to be highly positive on our outlook for the second half of the 2011 fiscal year," commented Weizhou Lian, CEO of Longtop. "Longtop's growth momentum and expanding market leadership are based on customers' trust in our quality solutions and service, and we will work hard to continue to deserve their loyalty."

\*     \*     \*

"Our Company performance has once more exceeded guidance for both top and bottom line results. Our order intake, margins and cash flow from operations which was US$31.6 million significantly improved in the second quarter as we had anticipated. On the back of strong demand and execution, we are now raising our fiscal 2011 revenue guidance to US$242.5 million up from 225.0 million at the beginning of our fiscal year and Adjusted Earnings Per Share of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 19 -

US$1.76 up from US$1.64." commented Derek Palaschuk, CFO of Longtop.

35.   On January 31, 2011, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Unaudited Financial Results for the Fiscal Quarter Ended December 31, 2010." Therein, the Company in relevant part, stated:

Third quarter software development revenues of US$72.5 million, an increase of 56.3% Year-on-Year (YoY);

Third quarter total revenues of US$76.9 million, an increase of 40.7% YoY;

Third quarter Adjusted(1) Operating Income of US$40.2 million, an increase of 37.1% YoY;

Third quarter Adjusted Net Income of US$35.6 million, an increase of 21.5% YoY. Included in Q3 2010 Adjusted Net Income was an income tax benefit of US$4.0 million (Q3 2011: nil). Excluding the income tax benefit, Adjusted Net Income would have increased by 40.7%;

Third quarter Adjusted Diluted Earnings Per Share of US$0.61, five cents ahead of Company guidance;

Cash Flow From Operations in Q3 2011 was a record US$43.9 million and US$75.0 million for the first nine months of fiscal 2011, an increase of 49.8% YoY;

Full Year Revenue Guidance increased from US$242.5 million to US$249.0 million and Adjusted Operating Income Guidance Increased from US$110.0 million to US$113.0 million

*     *     *

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"I am very pleased to report that we have delivered the strongest cash flow from operations to date since our IPO in 2007 on the back of outstanding execution from our management and employees. The momentum has accelerated during fiscal 2011 with our organic growth rate for software development revenue of approximately 40% in the first nine months significantly higher than the 30% guidance we gave at the outset of the year while maintaining a relatively stable organic operating margin. With this momentum, we are once again raising guidance for the fiscal fourth quarter of 2011," commented Weizhou Lian, CEO of Longtop. "For fiscal 2012 we continue to see strong demand from our customers that execute on their long-term IT development plans irrespective of short-term changes in macroeconomic factors. Based on our sales pipeline and ongoing discussions with customers about their IT spending plans, Longtop's growth prospects remain bright for fiscal 2012. I believe Longtop's competitive position is stronger than ever and we continue to take market share from our competitors."

\*     \*     \*

"Improving our accounts receivable management was an important objective for us this year.   I am particularly pleased to see record high operating cash flow of US$43.9 million in the third quarter and US$75.0 million for the first nine months which further underscores the solidity of business demand and overall management execution at Longtop.  During the fiscal third quarter order intake continued to be very strong, the Company was once again able to report higher-than-guided top and bottom line results and our industry leading margins give us significant room for additional investments in our business." commented Derek Palaschuk, CFO of Longtop.

36.    The statements contained in ¶¶25-35 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) certain related party transactions relating to XLHR; (2) that the Company had vastly overstated its operating margins; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 21 -

foregoing, the Company's statements were materially false and misleading at all relevant times.

## **Disclosures at the End of the Class Period**

37.     On or around April 26, 2011, Citron issued a report entitled, "Citron reports on Longtop Financial (NYSE:LFT)."  Therein, the report, in relevant part, stated:

**Introduction**

To think the fraud in the US listed Chinese stocks is limited to the RTO market is naïve.  Citron introduces a story that has all the markings of a complete stock fraud — with off balance sheet transactions that create outsized margins and management with backgrounds unsuitable to run a public company.

The most obvious risk factor in the China space, and the factor that has linked so many of these collapsed stocks, is obviously "the story too good to be true".   Which brings us to the curious case of Longtop Financial (NYSE:LFT), a company that produces software for the banking sector.  In this report, Citron outlines several concerns which should be considered by the auditors as they prepare the company's annual audit.  It is the opinion of Citron that every financial statement from its IPO to this date is fraudulent ... read on to understand.

**Margins far in excess of competitors**

\*     \*     \*

LFT reports spectacularly high margins — much greater than any peer company.  In the fiscal year March 2010 LFT reported gross margins of 69% and non-GAAP operating margins of 49%. Peers report gross margins between 15-50% and operating margins of 10-25% or even lower.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 22 -

Management's explanation for the high margins is that they have more standardized software sales then peers and standardized software has very high gross margins of around 90%. The company claims that these solutions and modules can be deployed to new customers with fewer man-hours and expenses.

Furthermore, even if you believe the standardized software gross margin is 90%, then this implies that LFT is generating 60-65% gross margins on customized software development which is still much higher than peers.   If the China space has taught us anything, it is that when something seems too good to be true, it probably is.  So what is the real reason for these supersized margins?

## 1.  Unconventional Staffing Model

Until recently, the vast majority of LFT's employees were not directly employed by the company. As of March 31, 2010 LFT had 4,258 employees of which 3,413 (80%) were employed by third-party HR staffing companies.

Of the employees at staffing companies, 95% (3,235) were from a single firm called Xiamen Longtop Human Resources Services Co (XLHRS), but this entity has no verifiable business presence except for LFT.  (The remaining 5% were being serviced by Beijing FESCO and Randstad Shanghai Temp Staffing, both of which do have a verifiable business presence beyond LFT).

LFT has consistently claimed that (XLHRS) is an unrelated party. The existence of Longtop Staffing has allowed LFT to transfer the majority of its cost structure off-balance sheet which creates opportunities for massive accounting fraud.  Does any of this sound unrelated to you?

   * Xiamen Longtop Human Resources (XLHRS) shares a name with its only customer:  Longtop Financial.

   * XLHRS was formed in May of 2007, just months before LFT's IPO

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 23 -

\* Even though it is its largest line item expenditure by far, XLHRS is never mentioned in filings until the annual report filed July 2008.

\* XLHRS has no website and does not seem to be soliciting any customers, even though they just lost their only customer

\* LFT did not have any long term contract and did not have to pay any penalties or minimums in their relationship with XLHRS

\* XLHRS used the same email server as their only client – as evidenced by these help wanted ads placed by them that ask perspective employees to contact them at "longtop.com. For example, this is a 2009 job listing listing for XLHRS using a Longtop.com email address:
http://www.xmjob.com.cn/web/temp/sh.aspx?ID=101114

\* As of writing of this report, Citron has reason to believe that XLHRS has for months been located in the same building as Longtop Financial.

\* When the outsourcing agency relationship was challenged, the company's response was to terminate it, and take all the employees in-house.

Same building, same email, same name, no other customers … but a totally unrelated party?

If in fact XLHRS is discovered to be anything other than a completely independent company, then every financial statement from inception to the present will have to be restated, and Longtop will go down in history as "another China fraud stock".

Previously, the company claimed this outsourcing arrangement was part of the justification of its outsized margins. Yet now that they are dumping XLHRS, the company says there will be no financial penalty, no cost and no margin loss associated with "taking a Mulligan" on the whole relationship! Great trick!

"Extreme outsourcing" is a common characteristic of other stocks in the China space that have collapsed under findings of fraud. Why?

Because it obliterates transparency.   For example:   the large advertising sales teams responsible for CCME's huge reported income couldn't be located – the company claimed they were outsourced. Similarly, DGW and DYP claimed outsourced distributor networks; reality was another matter.

We understand that Citron is making a bold claim in saying that Longtop is committing fraud by setting up their own HR Company to lay off certain liabilities.  What the outsource maneuver does is make invisible a lot of metrics that would afford meaningful insight into how the company operates, such as ratios of revenues per employee, costs per employee, etc.

Even though all the indicators and evidence would suggest XLHRS is a subsidiary of LFT, and not an unrelated party, would management be that brave to set up a company with the same name in order to deceive?

YES!!   THEY HAVE DONE IT BEFORE — AND HAVE BEEN FOUND LIABLE, TOO.

## 2.  Key Management Background Misdeeds

- "Study the past if you would define the future."  Confucius

Before they founded Longtop, Chairman and CEO Jia and Lian worked for a company named Xiamen Dongnan Computer Co.  They conveniently left this out of their bios in the prospectus. http://www.sec.gov/Archives/edgar/data/1412494/000119312507211136/df1.htm

Mr. Xiaogong Jia is one of our founders and has served as the chairman of our board of directors since our inception in June 1996. Mr. Jia has over 29 years of experience in China's IT industry. He is currently a standing director of the China Business Council, director of Fujian Computer Society, vice-president of Xiamen Computer Society and standing vice chairman of Xiamen Software Industry Society. Prior to founding our company in 1996, Mr. Jia has served various positions including deputy head engineer, vice general

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

manager and general manager of Xiamen Longtop Electronic Computer Company.

Mr. Weizhou Lian is one of our founders and has served as our director and chief executive officer since our inception in June 1996. He has over 20 years of experience in China's IT industry. Prior to founding our company, Mr. Lian held various positions, including technology department manager, sales department manager, vice general manager and general manager, of Xiamen Longtop Electronic Computer Company from 1985 to 1996.

A reason for this omission could be that they were sued by their former employer for unfair business practices.

Translated Case: Xiamen Dongnan vs Jia Xiaogong and Lian Weizhou

In the lawsuit, they were found liable for drawing salaries from their old employer while working for their own company.

Leading up to mid-1996, Jia Xiaogong (LFT Chairman, aka Ka Hiu Kung) and Lian Weizhou (LFT CEO, aka Lin Wai Chau) were working as managers at Xiamen Dongnan Computer Co (XDCC) and its parent company.

On July 15, 1996, unbeknownst to their employer, Jia Xiaogong, Lian Weizhou, and two others set up a company called Xiamen Dongnan Rongtong Electronic Co (XDREC), and allegedly recruited 43 of their co-employees.

The suit also alleged that on October 15, Lian signed a contract with one of XDCC's major clients, but inscribed on the contract that he was working for XDREC instead of XDCC. The two company names sound very similar in both Chinese and English so it would be likely that the client thought he was signing a contract with XDCC. (The good ole' same name confusion trick!)

And this is what we found most amazing:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 26 -

Then, on November 26 Xiaogong and Weizhou allegedly sent a letter to the Xiamen Postal Office stating, "due to our business needs, our address has changed from 5th floor, Huli Information Building to 11th floor, Huanjian Building, Xinzhong Road, Xiamen; please forward all relevant mails to the new address". The new address was a PO Box they set up to illegally intercepting the mail of their namesake company. http://www.xmjob.com.cn/web/temp/sh.aspx?ID=101114

It should be noted that this was no ordinary case. It went to the high court in Fujian. Talk about a "textbook case" – this case has literally become one! Here it is referenced as one of the cases in the book entitled:

"Anti Unfair Competition Law: Principal Cases"

So we are supposed to believe the management would never pull the same name trick.....even though they have done it in the past. Do You Really Believe This??

At the very least, had this track record of management been properly disclosed in the prospectus, investors would have had the option of considering it before deciding to plunge hundreds of millions of US investment dollars into this company. This was, after all, the foundation of the current Longtop. Would the IPO have actually closed?

**3. Non-transparent Management Transactions**

In a day in age where Warren Buffet and Bill Gates are pleading with billionaires to give half of their fortune away to charity, Longtop Founder and Chairman Hiu Kung Ka has gifted 70% of his stock holdings to his own employees and friends in the first 4 years of the company being public. This transaction is not just fishy.....it stinks.

We challenge anyone, including the analysts, to find any CEO or Chairman of a publicly traded company on any exchange in the world, who has "gifted" this amount of stock to his own employees.

Does the guy – who set up a dummy P.O. Box to divert his employer's mail and steal its customers – seem like the kind of guy

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

who would just give away his net worth with no encumbrances?  We know that Hiu Kung Ka is a shrewd businessman who doesn't mind playing loose with the rules.  And we are supposed to believe that he has just "gifted" 9 million shares, valued at over a quarter billion dollars?

It is the opinion of Citron that this transaction has an undisclosed "tail".  Was money used to either pay off hidden liabilities of the company?  Or does it generate an undisclosed benefit to Mr. Ka?  Either way, this type of transaction undermines the credibility of management, which, in the absence of full transparency, must extend to revenue recognition, acquisitions, and staffing cost issues, LFT's largest expense.

38.     On this news, the Company's shares declined $3.30 per share, or nearly 33%, to close on April 26, 2011, at $22.24 per share, on unusually heavy trading volume, and further declined another $4.51 per share, or more than 20%, to close on April 27, 2011, at $17.73 per share, also on unusually heavy trading volume.

39.     On April 28, 2011, the Company held a conference call with analysts to discuss the recent allegations against Longtop.  In that conference call, in which Defendant Palaschuk participated, the Company categorically denied all of the allegations asserted in the April 26, 2011 research report.

40.     On this news, the Company's shares increased $2.90 per share, or nearly 15%, to close on April 29, 2011, at $22.56 per share, on heavy trading volume.

41.     On May 9, 2011, Citron published a follow-up report entitled,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
- 28 -

"Longtop Financial (NYSE:LFT) Final Proof of Undisclosed Related Party Transactions." Therein, the report, in relevant part, stated:

**Management Continues to Mislead Investors**

Two weeks ago Citron Research reported on Longtop Financial (NYSE:LFT). Citron questioned whether the third-party agency disbursing payroll, benefits and other HR functions for over 80% of Longtop's technical employees was in fact an unrelated party, as Longtop has claimed for over two years. Just last week, the company vehemently denied our report, and went so far as to conduct a conference call, replete with analysts' defense of the name.

One week after Citron's report, Longtop CFO Derek Palaschuk, resigned his post as head of the audit committee of the heavily anticipated IPO Renren. This confirmed our suspicion that something very shady was going on at Longtop. It appeared as if Wall St. was preparing for the next shoe to drop on Longtop....well here it is.

Here is the proof — what you all have been waiting for. As Citron was preparing part II of its investigation into Longtop, we were beaten to the punch by respected research shop OLP Global. Now, while Citron will not distribute a copy of the OLP Report (call them up and become a client), we today post documentation that proves Xiamen Longtop Human Resources (XLHRS) is indeed a related party to Longtop Financial.

This linked PDF contains routine governmental filings of XLHRS and its SAIC filings. These documents from 2007, 2008, and 2009 are signed by employees of Longtop Financial's legal department, who have apparently been handling and signing off a variety of routine government filings for Longtop Human Resources (XLHRS).

**Proof of Ownership Relations**

So now we are supposed to believe that XLHRS, located on Longtop Financial's premises, has only one client, Longtop Financial, used the same email servers, AND had staff from Longtop's legal

department personnel sign their administrative filings with the government … but they're NOT a related party. C'mon….Really?

Once you get beyond the shock that legal responsibility of XLHRS is administered by Longtop employees, you get to the financials of XLHRS, as disclosed in the SAIC documents, which tell an ominous story that strongly warrants the scrutiny of objective third party verification.

AIC of XLHRS

According to LFT 20-F, XLHRS is to receive a service fee for all 3,200 employees they "handle" for Longtop's mostly technical and professional workforce (appx 76% of its headcount). This service fee is defined as "for salary + bonus + social insurance + other expense for the entire year". On a conservative basis, this would amount to $400 to 500 million RMB.

Yet, on these SAIC docs we see a total revenue (or service fee) of merely $5.1 mil RMB.

Every other number of the SAIC filings shows that XLHRS would be underpaying the government for benefits for Longtop Financial employees, but that is a sideshow if the company is lying about its revenue by such proportion.

Now we understand that much has been made about the inaccuracies of SAIC filings, but please note that these filings from XLHRS ARE AUDITED.   The accounting firm is Xiamen Xinzhou Certified Public Accountants Co., Ltd  http://www.xmxzxg.com/about_xz.asp

This throws out the whole myth of just scribbling some numbers on the paper and submitting them to the government.   Clearly these filings do not accurately reflect a company handling payroll, benefits and human resources expenses for 3,236 people, operating under an agreement such as this:

http://www.sec.gov/Archives/edgar/data/1412494/000095012310065856/c03364exv4w36.htm

Citron believes that one of the two scenarios stated below is true…which one we don't know.

1. Longtop Human Resources (XLHRS) is and was always a related party to Longtop Financial, essentially a captive entity created to hide expenses of Longtop Financial, and/or underpay employee benefits. They never in fact paid LFT employees as stipulated by SEC filings and press releases, but rather were always a vehicle to hide off balance sheet transactions.

2. Longtop Financial is a fraud of massive proportion that does not operate nearly on the scale that they claim … either way, Longtop Human Resources is still a related party.

Ximamin Longtop Human Resources (XLHRS) is apparently not doing the size and scale of non-related party business that was reflected to Longtop Financial shareholders. As to the other details, we will let it all play out in the many lawsuits that the company faces.

In order to properly deliver any form of transparency to Wall Street, investors and analysts need to know who is paying Longtop's employees, who is paying their benefits, are the amounts proper as according to Chinese law, and are the expenses being fully reflected on Longtop's financials.

42.     On this news, the Company's shares declined $1.67 per share, or more than 8%, to close on May 9, 2011, at $18.54 per share, on unusually heavy trading volume.

43.     On May 10, 2011, the Company issued a press release entitled, "Longtop Financial Technologies Limited Issues Statement in Response to Research Reports." Therein, the Company claimed that the allegations against it were patently false and that the Company had not committed fraud of any kind.

44.    On this news, The Company's shares increased $1.46 per share, or nearly 8%, to close on May 20, 2011, at $20.00 per share, on unusually high volume.

45.    On May 12, 2011, Longtop issued a press release further denying the claims of both Citron reports, as well as other reports calling into question the Company's previously filed and announced financial statements.

46.    On May 17, 2011, trading of Longtop's shares was halted.

47.    On May 19, 2011, the Company announced that it would not announce its fourth quarter and fiscal year 2011 financial results on May 23, 2011, as previously scheduled.

48.    On May 23, 2011, the Company issued a press release entitled, "Longtop Financial Technologies Limited Announces Resignation of Independent Auditor and Chief Financial Officer, Initiation of Independent Investigation, SEC Inquiry and COO Appointment." Therein, the Company, in relevant part, stated:

> HONG KONG, May 23, 2011 /PRNewswire-Asia/ -- Longtop Financial Technologies Limited ("Longtop" or the "Company") (NYSE: LFT) announced today that the Company's registered independent accounting firm, Deloitte Touche Tohmatsu CPA Ltd. ("DTT"), has resigned as auditor of the Company by letter dated May 22, 2011. The Company also announced that Derek Palaschuk, the Company's Chief Financial Officer, tendered his resignation by letter, dated May 19, 2011, and the Board has taken his resignation under advisement.

In its letter, DTT stated that it was resigning as the result of, among other things (1) the recently identified falsity of the Company's financial records in relation to cash at bank and loan balances (and possibly in sales revenue); (2) the deliberate interference by certain members of Longtop management in DTT's audit process; and (3) the unlawful detention of DTT's audit files. DTT further stated that DTT was no longer able to rely on management's representations in relation to prior period financial reports, that continued reliance should no longer be placed on DTT's audit reports on the previous financial statements, and DTT declined to be associated with any of the Company's financial communications in 2010 and 2011.

Longtop's Audit Committee has retained US legal counsel and authorized the retention of forensic accountants to conduct an independent investigation into the matters raised by DTT's resignation letter. The Audit Committee has also initiated a search for a new auditor. Further, Longtop was advised by the United States Securities and Exchange Commission ("SEC") that the SEC was conducting an inquiry regarding related matters. Longtop intends to cooperate fully with the SEC's inquiry.

Longtop is unable to determine the full effect of these matters, including whether any restatement of its historical financial statements will be required, until the Audit Committee completes its review. Longtop cannot predict when it will announce its financial results for Q4 2011, or when it will file its Form 20F for the fiscal year ended March 31, 2011.

Further, the Company announced that Wei Dong, Senior Vice President since April 1, 2009, assumed the responsibility of Chief Operating Officer of the Company.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons or entities who purchased Longtop securities between May 15, 2009 and May 17,

2011, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.   During the Class Period, Longtop securities were actively traded on the New York Stock Exchange ("NYSE").   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Millions of Longtop shares were traded publicly during the Class Period on the NYSE and as of March 31, 2010, the Company had 56,231,188 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Longtop or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

53. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the operations, financial performance and prospects of Longtop; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

54. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

55.   The market for Longtop securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, Longtop securities traded at artificially inflated prices during the Class Period.   Plaintiff and other members of the Class purchased or otherwise acquired Longtop securities relying upon the integrity of the market price of the Company's securities and market information relating to Longtop, and have been damaged thereby.

56.   During the Class Period, Defendants materially misled the investing public,  thereby inflating the price of Longtop securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Longtop's business, operations, and prospects as alleged herein.

57.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Longtop's financial performance and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

58.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

59.   During the Class Period, Plaintiff and the Class purchased Longtop securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses

## SCIENTER ALLEGATIONS

60.   As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such

statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Longtop, his/her control over, and/or receipt and/or modification of Longtop's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Longtop, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

61. The market for Longtop securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Longtop securities traded at artificially inflated prices during the Class Period. On November 10, 2010, the Company's stock closed at a Class Period high of $42.73 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Longtop securities and market information relating to Longtop, and have been damaged thereby.

62. During the Class Period, the artificial inflation of Longtop stock was caused by the material misrepresentations and/or omissions particularized in this

Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Longtop's financial performance and prospects. These material misstatements and/or omissions created an unrealistically positive assessment of Longtop and its business, operations, and financial performance, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

63. At all relevant times, the market for Longtop securities was an efficient market for the following reasons, among others:

(a) Longtop stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Longtop filed periodic public reports with the SEC and the NYSE;

(c) Longtop regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire

services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Longtop was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

64.     As a result of the foregoing, the market for Longtop securities promptly digested current information regarding Longtop from all publicly available sources and reflected such information in Longtop's stock price.  Under these circumstances, all purchasers of Longtop securities during the Class Period suffered similar injury through their purchase of Longtop securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and

there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Longtop who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

66. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Longtop's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

68. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Longtop's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Longtop's financial well-being and prospects, as specified herein.

70. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Longtop's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in

order to make the statements made about Longtop and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

71.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

72.     The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Longtop's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Longtop securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information

that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Longtop securities during the Class Period at artificially high prices and were damaged thereby.

74.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's improper accounting practices, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Longtop securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

75.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

//

//

### SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

77. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78. The Individual Defendants acted as controlling persons of Longtop within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is

presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.   As set forth above, Longtop and the Individual Defendants each violated either Section 10(b) or Rule 10b-5, by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

### JURY TRIAL DEMANDED

2

Plaintiff hereby demands a trial by jury.

3

4    DATED: June 21, 2011                    GLANCY BINKOW & GOLDBERG LLP

5                                            By: _____
6                                            Lionel Z. Glancy
                                             Michael Goldberg
7                                            Robert V. Prongay
8                                            1801 Avenue of the Stars, Suite 311
                                             Los Angeles, California 90067
9                                            Telephone: (310) 201-9150
10                                           Facsimile: (310) 201-9160

11                                           *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SWORN CERTIFICATION OF PLAINTIFF**

Longtop Financial, Inc., **SECURITIES LITIGATION**

I, Sanjay Madaan, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Longtop Financial, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Longtop Financial, Inc. during the class period set forth in the Complaint are as follows:

| | | | | |
|---|---|---|---|---|
| I bought *100* | shares on *02* / *18* / *2011* | at $ *32-05* per share. | | |
| I bought _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I bought _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I bought _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I bought _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| | | | | |
| I sold _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I sold _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I sold _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I sold _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |
| I sold _____ | shares on ___ / ___ / ___ | at $ _____ per share. | | |

(List Additional Transactions on a Separate Page If Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

_____ [] Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

SANJAY   MADAAN

Dated: *6/16/2011*

(Please Sign Your Name Above)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV11- 5182 MMM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Lionel Z. Glancy (#134180)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY MAADAN, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN and DEREK PALASCHUK<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11  05182 MMM(MANx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lionel Z. Glancy_____, whose address is _1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ JUN 2 1 2011 _____        By: _____

CHRISTOPHER POWERS

Deputy Clerk

(Seal of the Court)

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                               **SUMMONS**

Name & Address:
Lionel Z. Glancy (#134180)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY MAADAN, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN and DEREK PALASCHUK<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11 05182 MMM (MANx)**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): THE ABOVE-NAMED DEFENDANTS

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Lionel Z. Glancy_____, whose address is 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____JUN 2 1 2011_____

By: ____**CHRISTOPHER POWERS**____
    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> SANJAY MAADAN, Individually and on Behalf of All Others Similarly Situated, | **DEFENDANTS** <br> LONGTOP FINANCIAL TECHNOLOGIES LIMITED, WAI CHAU LIN and DEREK PALASCHUK |
| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> Lionel Z. Glancy (#134180) <br> Glancy Binkow & Goldberg LLP <br> 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, T  (310) 201-9150 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No       ☐ **MONEY DEMANDED IN COMPLAINT: $** to be proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Section 10(b) and 20(a) of the Securities Exchange Act and Violation of SEC Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

# CV11 05182

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:11-cv-04714-MMM -FFM; 2:11-cv-04402-MMM -FFM

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑A. Arise from the same or closely related transactions, happenings, or events; or
    ☑B. Call for determination of the same or substantially related or similar questions of law and fact; or
    ☑C. For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Glendale, Arizona |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, CA | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date June 21, 2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |